# CHRISTOPHER PARSLOW *v.* ZONING BOARD OF APPEALS OF THE TOWN OF MIDDLETOWN ET AL.
## (AC 28403)

Flynn, C. J., and Lavery and West, Js.*

---

* The listing of judges reflects their status on this court as of the date of oral argument.

Argued November 13, 2007—officially released September 16, 2008

*Michael F. Dowley*, for the appellant (defendant Seventeen Oaks, LLC).

*John S. Bennet*, for the appellee (plaintiff).

*Timothy P. Lynch*, for the appellee (named defendant).

*Opinion*

LAVERY, J. The defendant Seventeen Oaks, LLC, appeals from the judgment of the trial court sustaining the appeal of the plaintiff, Christopher Parslow,[1] from the decision of the zoning board of appeals of the town of Middletown (board)[2] that overturned the cease and desist order of the zoning and wetlands officer and held that the retail sale of food on a residentially zoned

[1] The plaintiff is an abutting landowner and is therefore statutorily aggrieved under General Statutes § 8-8 (a) (1).

[2] The board adopted the briefs and oral argument of Seventeen Oaks, LLC. Because only Seventeen Oaks, LLC, has appealed, we refer to it in this opinion as the defendant.

property was a preexisting, legal nonconforming use. The defendant claims that the court improperly (1) allowed the submission of evidence not before the board under General Statutes § 8-8 (k) and (2) substituted its judgment for that of the board. We affirm the judgment of the trial court.

The defendant owns two adjacent parcels designated lot two, located at 1277 Randolph Road, and lot three, at 980 South Main Street in Middletown. Both lots are zoned for residential use, but 980 South Main Street has a commercial garage that is a valid nonconforming use. The defendant erected a food vending stand called Miss Patsy's Kitchen, which is described as a trailer with wheels but is currently on a platform and immobile due to the water and electrical lines running into the trailer on the lot at 1277 Randolph Road.

On July 12, 2004, Middletown's zoning and wetlands officer issued a cease and desist order against the defendant, alleging a zoning violation because food vending is not permitted in a residential zone. On July 30, 2004, the defendant appealed from the decision to the board, claiming that it had a legal nonconforming use. The board heard the appeal on September 2, 2004. At the hearing, the board heard from the zoning and wetlands officer, counsel for the defendant and members of the public about their recollections of what existed on the property prior to the implementation of zoning in that area in the 1950s. There was testimony from individuals about church fundraisers and Lions Club auctions in the 1950s when there were food vendors on the property. The public also testified about the history of retail uses on the property for the sale of items such as sand and gravel. There was a letter from the prior zoning enforcement officer that referred to a "hot dog stand or cart" on the previous owner's property that was a stop for a bus that ran along Route 17. The plaintiff attended the board meeting and spoke out against the

hot dog stand, raising the board's awareness that the property at issue was in fact two separate parcels under one owner by orally citing the Middletown tax assessor's records. He also spoke about the house that had existed on the property until 1994, which was moved after the state condemned the house to widen the road in front of it. The plaintiff did not offer any exhibits to the board.

In a notice of decision dated September 10, 2004, the board reversed the decision of the zoning and wetlands officer regarding the issuance of the cease and desist order. The plaintiff appealed from this decision on February 8, 2005,[3] alleging aggrievement and claiming that the board acted illegally, arbitrarily and in an abuse of its discretion.

On April 27, 2005, the plaintiff filed a motion to supplement the record with the "documentary evidence in support [of] the specifications contained in his oral presentation." The defendant filed an objection to this motion on May 23, 2005, and the board filed an objection on June 3, 2005. The court, *Silbert, J.,* granted this motion in a memorandum of decision on July 14, 2005. In granting this motion, the court cited § 8-8 (k) for the proposition that at the court's discretion, it may allow additional evidence to permit an equitable disposition of the appeal. The court wrote that the items the plaintiff sought to introduce would have been admissible before the board, and the only reason for not having them in the record was that the plaintiff was a layman and was unaware of what was necessary to perfect the record. The court countered the contention by the defendant and the board that ignorantia juris non excusat (ignorance of the law does not excuse) with another Latin

---

[3] The plaintiff originally filed his appeal on September 21, 2004, but it was dismissed by the court because an officer failed to serve the appropriate parties. Service was perfected in this appeal pursuant to General Statutes § 8-8 (q), and the appeal was, therefore, timely.

phrase, ignorantia juris sui non praejudicat juri (ignorance of one's own right does not prejudice the right), opining that the plaintiff was not holding back the documents intentionally and that greater latitude should be afforded a pro se litigant who is objecting to a petition.

In a memorandum of decision filed July 6, 2006, the court, *Booth, J.*, sustained the plaintiff's appeal and reversed the decision of the board. The court found that the food vending service currently on 1277 Randolph Road was not on that lot prior to the adoption of the Middletown zoning regulations and that it was irrelevant whether food vending historically existed at 980 Main Street. The court concluded that Miss Patsy's Kitchen is an illegal use of the residential property. After a denial of the defendant's motion for reargument of the decision of the court on August 2, 2006, the defendant petitioned to this court for certification to appeal, which was granted on December 13, 2006. This appeal followed.

I

The defendant's first issue on appeal is whether the court, *Silbert, J.*, abused its discretion in allowing supplemental evidence into the record. General Statutes § 8-8 (k) provides in relevant part: "The court shall review the proceedings of the board and shall allow any party to introduce evidence in addition to the contents of the record if . . . (2) it appears to the court that additional testimony is necessary for the equitable disposition of the appeal. . . ."

In *Troiano* v. *Zoning Commission*, 155 Conn. 265, 268, 231 A.2d 536 (1967), our Supreme Court held that the trial court had the authority to decide in the exercise of its discretion, whether additional evidence was necessary for the equitable disposition of the appeal. Accordingly, we need to decide only whether the court abused its discretion in permitting additional evidence

to supplement the record of the proceedings before the board.

"When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness." (Internal quotation marks omitted.) *Gevers* v. *Planning & Zoning Commission*, 94 Conn. App. 478, 488–89, 892 A.2d 979 (2006). "We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *Murphy* v. *Zoning Board of Appeals*, 86 Conn. App. 147, 152, 860 A.2d 764 (2004), cert. denied, 273 Conn. 910, 870 A.2d 1080 (2005). "Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . We do not . . . determine whether a conclusion different from the one reached could have been reached." (Internal quotation marks omitted.) *Kramer* v. *Petisi*, 91 Conn. App. 26, 37, 879 A.2d 526 (2005), aff'd, 285 Conn. 674, 940 A.2d 800 (2008).

Judicial discretion has best been described by Chief Justice Maltbie in his learned text on Connecticut appellate procedure: "It is frequently stated in the opinions that a particular conclusion or ruling is one within the discretion of the trial court, to be held erroneous only if the court abused that discretion. The essence of such a discretion is that different minds could, upon the same circumstances, arrive reasonably at varying conclusions. The supreme court will not disturb a ruling made in the exercise of a trial court's discretion unless it finds that the court acted unreasonably, unfairly, or some improper application of a rule of law was involved. Judicial discretion is always a legal discretion. Its abuse will not be interfered with upon appeal to this court except in a case of manifest abuse where injustice appears to have been done . . . The test is, has the

court exercised unreasonable discretion or in other words, is its exercise so unreasonable as to constitute an abuse of discretion . . . With the exercise of discretionary powers, courts rarely, only for grave reasons, interfere. These grave reasons are found only where fraud, corruption, improper motives or influences, plain disregard of duty, gross abuse of power or violation of law, enter into or characterize the result. Difference in opinion of judgment is never a sufficient ground for interference. The term abuse of discretion does not imply a bad motive or a wrong purpose but merely means that the ruling appears to have been made on untenable grounds." (Internal quotation marks omitted.) W. Maltbie, Connecticut Appellate Procedure (2d Ed. 1957) § 59, pp. 67–68.

In *Gevers* v. *Planning & Zoning Commission*, supra, 94 Conn. App. 478, this court stated that "[a]n appeal from an administrative tribunal should ordinarily be determined on the record made before that tribunal, and only when that record fails to present the hearing in sufficient scope to determine the merit of the appeal or when some extraordinary reason requires it should the court hear evidence. *Beach* v. *Planning & Zoning Commission*, 141 Conn. 79, 80, 103 A.2d 814 (1954). Thus, allowance at trial of additional evidence under the concept of evidence necessary for the equitable disposition of the appeal under [§] 8-8 (k), has generally received a restrictive interpretation to avoid review of the agency's decision based in part on evidence not presented to the agency initially. R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 32.8, p. 136." (Internal quotation marks omitted.) *Gevers* v. *Planning & Zoning Commission*, supra, 489.

Under § 8-8 (k) (2), there are certain areas in which it is almost obligatory that the trial court allow evidence to supplement the record before the board. These areas

are set forth in great detail in § 32.8 of volume 9A of Robert A. Fuller's text on Connecticut land use law and practice.[4] Some of the instances in which supplemental evidence is almost always allowed occur when there are claims of confiscation, improper receipt of evidence after the public hearing, conflicts of interest by members of the land use board, predetermination and former applications to the agency, among others. These areas rarely would have been addressed at the public hearing and are proper issues in the appeals. There is another category under § 8-8 (k) (2) in which evidence is offered to supplement the record to support the moving party's position on appeal or to clarify the position taken before the board. For these types of cases, Fuller, in § 32.8, summarizes the law: "The trial court has discretion on whether to take additional evidence, but should ordinarily allow it only when the record is insufficient or when there is an extraordinary reason for it, and before allowing additional evidence the court should (1) determine that the additional evidence is material and (2) that there was a good reason for the failure to present the evidence in the original proceeding." R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 32.8, pp. 207–208.

The plaintiff moved to supplement the record with the following documents: "Exhibit A. The [a]ssessor's street card for the lot known as 1277 Randolph Road, the location of the hot dog stand, Map 30, Block 35 Lot 2, account number R12579, certified copy attached;

"Exhibit B. The [a]ssessor's record for 980 South Main Street, Map 30, Block 35-8 Lot 3 account number

---

[4] For a scholarly discussion on such areas in which supplemental evidence in a land use case is ordinarily allowed, see *MJM Land Development* v. *Madison Inland Wetland Assn.*, Superior Court, judicial district of New Haven, Docket No. CV-03-0484371-S (August 13, 2004), and *Harrison* v. *Board of Zoning Appeals*, Superior Court, judicial district of New Haven, Docket No. CV-03-0477037-S (August 2, 2004) (37 Conn. L. Rptr. 640).

R12578, the parcel containing the adjacent pre-existing non-conforming, commercial use, certified copy attached;

"Exhibit C. A certified copy of Middletown Assessor's Map number 30 [s]howing the two separate parcels described in A & B above;

"Exhibit D. A certified copy of a survey map entitled 'City of Middletown, Map Showing Easements Acquired From Thomas E. Wilcox by the State of Connecticut' Intersection realignment of Connecticut Route 17 (Middletown Avenue) and Connecticut Route 155 (Randolph Road) (recorded at Book 58 as Map number 94 of the records of the City Clerk of the City of Middletown);

"Exhibit E. A certified copy of the survey plan entitled 'Re-subdivision Map Land Now or Formerly of Mylchreest Realty, LLC' being a certain plan approved by the Middletown Planning and Zoning Commission of January 22, 2003 for re-subdivision of property at 980 South Main Street, Middletown (recorded in Book 45, as Map number 3 of the Middletown City Clerk's Office);

"Exhibit F. A certified copy of the Warranty Deed recorded Volume 225, page 491 and dated September 22, 1948 from Raymond H. Wilcox to Thomas E. Wilcox (for the property at 1277 Randolph Road);

"Exhibit G. A certified copy of a Probate Certificate dated December 29, 1970 recorded in the Probate Records at Volume 372 at Page 509 (for the property at 980 South Main [Street]);

"Exhibit H. A certified copy of a certain Administrator Deed recorded Volume 1322 at Page 832 of the Land Records, dated August 27, 2002 from Sharon W. Madeux, Administratrix, Estate of Thomas E. Wilcox, Sr. to Mylchreest Realty, LLC (for both 1277 Randolph Road and 980 South Main Street)."

The plaintiff argues that the documents are material in that they pertain to the very issue raised and were discussed not only by the plaintiff but by the counsel for the defendant, as well as the town planner, and by the members of the board. The plaintiff argues that the documents show a separate residential parcel, under separate ownership, separately set out and designated by the municipality in its tax records and used as a residential property. The plaintiff also argues that there was a good reason for his failure to present the evidence in the original proceeding in that the issue of a separate lot was specifically raised in detail by the plaintiff and another neighbor, William Wamester, during the hearing and that as laypersons, unschooled in legal technicalities, they believed that the board would protect their interests and check the public documents in making its decision. The plaintiff further argued that an equitable disposition required the inclusion of these exhibits because the lot descriptions were key to the board and that its confusion led to a legally incorrect decision.

The defendant argues that the plaintiff could have presented these documents of the public record, there is no claim of evidence in the record that the plaintiff was prevented from introducing this evidence and that such evidence was not before the board at the time it made the decision.

The court, *Silbert, J.*, in granting the motion to supplement the record, found that there was no claim that the plaintiff held back the documents intentionally so as to surprise or confuse the defendant but, on the contrary, that the plaintiff spelled out the nature of his claim quite clearly, neglecting only to document it with public records. The court further found that great latitude should be given a pro se individual who is objecting to a petition before a commission, as opposed to one initiating the petition, because the former is reacting to oral and documentary argument made at a public

hearing and typically has less time to prepare a completely documented response. In addition, the court reasoned that the plaintiff directed the board's attention to the precise issue that was of concern to him and alerted the board to the documents that supported his position with specificity.

The court stated that if the plaintiff merely told the board that " 'the hot dog stand is not on the same property that was once used for retail purposes' and nothing more," the court would agree that it would be an improper invocation of § 8-8 (k). The court reasoned that because the plaintiff was so specific in his reference to the properties in question and to the location of documents that could support his position, the board was on fair notice as to the nature of his claim. It further found that the arguments, if accurate, could have a significant impact on the appeal. The court concluded that the record should be expanded to produce an equitable disposition. The court further concluded that the decision is a narrow one and that the decision does not open the door to a widespread misuse of proceedings at the board level to set up a subsequent Superior Court appeal on the basis of issues that could not have been contemplated at the board level.

We agree with Fuller that additional evidence in the case in which the evidence could have been presented to the commission should be allowed only when the evidence is material and there is good reason for the failure to produce the evidence at the original hearing.

We begin our analysis by referring to the minutes of the board's September 2, 2004 meeting: "[T]he board reversed the decision by the [z]oning [e]nforcement [o]fficer regarding the issuance of a cease and desist order for a food vending trailer operating at 980 South

Main Street." The plaintiff, in his testimony,[5] objected on the ground that the food trailer is located at 1277 Randolph Road, not 980 South Main Street, and that the trailer was sitting on the part of 1277 Randolph Road where a yellow house stood for many years, which was moved in 1994 when the state reconstructed the intersection of the roads. It was a residential house on a separate lot and could not be part of 980 South Main Street because it would violate § 14.06 of the Middletown zoning regulations. All the exhibits reinforce the plaintiff's argument that any preexisting use of food sales was on the lot at 980 South Main.

Section 14.06 provides: "No additional structure or enlargement or increase of land area or relocation in

[5] At the September 2, 2004 meeting of the board, the plaintiff testified as follows: "I'm Christopher Parslow from 11 Maple Shade Road. I own the adjacent property. Since you have narrowed it down to this question of prior use and the idea of the continuation of use of this, I'd like to point out that in fact the citation and the discussion has been aimed at the wrong piece of property. That is, we've been talking about 980 South Main, and the hot dog stand actually stands on property that on [the] Middletown tax assessor's records is 1277 Randolph Road. That is lot 30 35A2, parcel R, 12579. This is a one-third acre, 0.33 acre piece of land that is zoned R15. It has an assessed value of $1750. I raise that simply to make a point of equity.

"I wonder if the members of the Chamber of Commerce realize what kind of property taxes this business is paying. It's owned by Milchreest Realty of 391 Maple Shade Road. It is definitely residential. It has been residential for at least forty years. There is a house there that was moved to 34 Acert Drive [and] is owned by Mary Swaykiss. That house was moved in roughly 1994 when the state re-did the corner of South Main and Randolph Road. It has never been and never will be part of 980 South Main because to do so would be in violation of Middletown zoning § 14.06, which prohibits the expansion of nonconforming properties.

"I believe that the appellant, and his lawyer, who I didn't work with when I bought my property from Tom Wilcox, knew this when he bought the property because I knew it when I bought my property, when I made inquiries into buying it. Consequently, there is no debate here from my perspective and I believe from a legal standpoint as well. This sits on a piece of residential property that had a house on it [and] has always been residential. Whether they sold a hot dog out of the kitchen or not shouldn't be a factor. There was never any intent to have a hot dog stand on this property."

whole or in part of any nonconforming use shall be permitted." Middletown Zoning Regs., § 14.06.

Because everyone was in agreement that there was a yellow house at 1277 Randolph Road, all the public records admitted as exhibits by the court, *Silbert, J.*, were material and all were referenced in the plaintiff's testimony. The court also found that the plaintiff, a layman, was responding to a prepared presentation with reference to town records and the zoning regulations with specificity and not generally and that the record should be supplemented for equitable reasons.

Although Appellate Court and Supreme Court cases have upheld the trial court's not admitting evidence as a proper exercise of judicial discretion; see *Tarasovic* v. *Zoning Commission*, 147 Conn. 65, 69–70, 157 A.2d 103 (1959); *Gevers* v. *Planning & Zoning Commission*, supra, 94 Conn. App. 478; *Collins Group, Inc.* v. *Zoning Board of Appeals*, 78 Conn. App. 561, 580–82, 827 A.2d 764, cert. denied, 266 Conn. 911, 832 A.2d 68 (2003); *Samperi* v. *Planning & Zoning Commission*, 40 Conn. App. 840, 851, 674 A.2d 432 (1996); *Swensson* v. *Planning & Zoning Commission*, 23 Conn. App. 75, 79–80, 579 A.2d 113 (1990); we cannot say that the court, *Silbert, J.*, abused its judicial discretion. The court limited its decision to the very narrow set of facts of this case and ruled that it was important to show from the public records referred to by the plaintiff that there are two lots and that the yellow residential house sat for many years where the hot dog trailer is now. The court acted in accord with § 8-8 (k) (2) and also with existing case law when it made its ruling on the basis of materiality and good cause for failure to produce the documents at the hearing. We find that the court acted within its judicial discretion.

## II

The defendant's second claim on appeal is that the court, *Booth, J.*, improperly reversed the decision of

the board by substituting its judgment for that of the board. The plaintiff argues that the court properly found that there was no evidence to support the board's decision and that concessions by the defendant's counsel that the uses of the property were nonconforming furthered this conclusion. We agree with the plaintiff.

"Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court had to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal. . . . [U]pon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons . . . . We, in turn, review the action of the trial court. . . . The burden of proof is on the plaintiff to demonstrate that the board acted improperly." (Citations omitted; internal quotation marks omitted.) *Spero* v. *Zoning Board of Appeals*, 217 Conn. 435, 440, 586 A.2d 590 (1991).

A nonconforming use runs with the land and is like a variance in that it is not personal in nature. See *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 859, 670 A.2d 1271 (1996). Further, "[w]here a nonconforming use of property exists, it must be contained within the limits of the use in existence when the regulations were adopted, so that it is illegal to alter a building containing the nonconforming use where the structural changes amount to an enlargement of the area used for that purpose." R. Fuller, 9B Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 52:3, p. 214.

In its memorandum of decision, the court, *Booth, J.*, found that there was no evidence in the record of a structure to sell food on either lot prior to the adoption of the zoning code. The court also found that there was no evidence of a preexisting nonconforming use on 1277 Randolph Road and that it is a residential lot. It further found that it is irrelevant whether food vending was part of the nonconforming use on 980 South Main Street because the current food vending is occurring only at 1277 Randolph Road.

The plaintiff refers to concessions in the record in which counsel for the defendant acknowledged that the hot dog stand is a nonconforming use. Before the court, counsel for the defendant claimed that the nonconforming use did not violate the local regulations because the defendant proved a use on the property at the board hearing and that it had not been abandoned.[6] After conceding that the lots were historically owned by a person and a company separately, counsel for the defendant argued that the lots were treated as one yard and that the commercial use was over both properties. The maps in the record show that the hot dog stand occupies the very spot where the yellow house stood from 1967 to 1994 when it was moved off the lot when the state highway department took part of the property to widen the road.

Overall, there is no evidence in the record that shows that food vending or a hot dog cart was ever located at 1277 Randolph Road. Further, there is no testimony or evidence that shows how large the alleged cart on 980 Main Street was, where on the property it was located or that it was a permanent fixture, as is the

---

[6] Section 14.05 of the Middletown zoning regulations provides: "Any structure, or structure and land in combination, in or on which a nonconforming use is superseded by a permitted use, shall thereafter conform to the regulations for the zone, and the non-conforming use may not thereafter be resumed."

current structure on 1277 Randolph Road. There is no question that there are two separate lots and that the cease and desist order, the notice of appeal and the decision of the board cite 980 South Main as the lot with the hot dog stand when the structure is on 1277 Randolph Road. There is no evidence of a hot dog stand previously being located on the Randolph Road lot; 1277 Randolph Road is residential. It would violate § 14.06 of the zoning regulations to extend commercial use to the Randolph property from 980 South Main Street or to move a nonconforming use from one property to another. Alternatively, the parties are in agreement that a yellow house stood on the property at 1277 Randolph Road until 1994; therefore, even if there was a preexisting use of food vending on that lot, under § 14.05 of the zoning regulations, it cannot be resumed after any permitted use was undertaken, and here the lot became and remains residential. The plaintiff has met his burden of proof to show that the board acted improperly, and therefore the court was correct in its judgment that the decision of the board was illegal.

The judgment is affirmed.

In this opinion WEST, J., concurred.

FLYNN, C. J., dissenting. This case raises questions about the deference to be given to local zoning agencies when undertaking a judicial review of their findings and conclusions. I respectfully dissent from the majority opinion and would conclude that the court improperly allowed the introduction of eight separate documents into evidence at the Superior Court hearing on the zoning appeal of the plaintiff, Christopher Parslow, although those documents had never been introduced before the zoning board of appeals of the town of Middletown. I do so because judicial review of the actions of a zoning board is limited generally to a review of the

record evidence the board had before it, and the plaintiff in this case has not shown good reason for failing to present before the board the evidence he produced only before the Superior Court.[1]

I agree that the language of General Statutes § 8-8 (k) is broad insofar as subdivision (2) of it permits the Superior Court in an appeal from a decision of a zoning board to "allow any party to introduce evidence in addition to the contents of the record if . . . (2) it appeals to the court that additional testimony is necessary for the equitable disposition of the appeal. . . ." This statutory breadth, however, has been limited by judicial decisions that recognize that the court's usual role on judicial review is to review the record that the zoning authority had before it and to decide whether, on that record, the board acted arbitrarily, unlawfully or in abuse of the discretion vested in it on the basis of the evidence. See *Beach* v. *Planning & Zoning Commission*, 141 Conn. 79, 80, 103 A.2d 814 (1954).

The majority cites *Troiano* v. *Zoning Commission*, 155 Conn. 265, 268, 231 A.2d 536 (1967), as authority

[1] I also find it problematic that the cease and desist order of the Middletown zoning and wetlands officer, which the trial court and the majority believe properly was issued and should be upheld, ordered the defendant Seventeen Oaks, LLC, to stop the commercial food vending service at 980 South Main Street, Middletown. The plaintiff, himself, contended, and the trial court agreed, that the food vending trailer actually is located at 1277 Randolph Road. The court also found, however, that there was some evidence that a food vending service had existed at 980 South Main Street prior to the adoption of zoning regulations. The court stated further that because the food vending activity was not now taking place at 980 South Main Street, it need not determine whether the prior food vending activity would be sufficient to support the validity of a nonconforming use at 980 South Main Street. In reality, the question before the board in this case was whether it should uphold the cease and desist order, which it voted to overturn. On appeal, the Superior Court was to review the decision of the board, which overturned a cease and desist order for 980 South Main Street. The Superior Court then reversed the board's decision, effectively reinstating the cease and desist order, which the majority on appeal also finds proper. I question how a cease and desist order issued to 980 South Main Street can be upheld and enforced against an activity taking place at 1277 Randolph Road.

for a court to allow the admission of additional evidence in the exercise of its discretion. *Troiano*, however, seems to fall into one of those narrow exceptions that would not apply here. *Troiano* held that, when a due process confiscation claim was made, it was error for the Superior Court to bar new evidence of the effect of new regulations on an existing gravel mining operation. There was no constitutional claim in the present case, and, accordingly, *Troiano* is inapposite. See *Gevers* v. *Planning & Zoning Commission*, 94 Conn. App. 478, 490, 892 A.2d 979 (2006) (*Troiano* involved claims of constitutional dimension and is inapposite to case in which no constitutional claim advanced).

I agree with Fuller's scholarly treatise, in which he summarizes the narrow exceptions permitting the admission of new evidence. See R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 32.8, pp. 209–12. These exceptions include claims of constitutional confiscation, fraud and other such narrow situations. Id. I agree with the majority that the disputed evidence in the present case does not fall into any of those recognized narrow exceptions. Fuller also opines that new evidence should not be admitted at the Superior Court trial unless there is a good reason for the failure of the party to present the evidence in the original proceeding. Id. "The trial court has discretion on whether to take additional evidence, but should ordinarily allow it only when the record is insufficient or when there is an extraordinary reason for it, and before allowing additional evidence the court should (1) determine that the additional evidence is material and (2) that there was a good reason for the failure to present the evidence in the original proceeding." Id., pp. 207–208. I agree.

I disagree with the majority, however, that there was any good reason for the plaintiff's failure to introduce this known evidence to the zoning board of appeals in

this case. The only reason advanced by the plaintiff was that he had not been represented by a lawyer and, therefore, was ignorant of the importance of the eight documents. Carving an exception for such a reason will open the "barn door," and the exception will swallow the rule of reliance on the record before the board when undertaking judicial review. Accordingly, I would conclude that the admission of the new evidence was not a proper exercise of the court's discretion. Therefore, I respectfully dissent.