******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LANDMARK DEVELOPMENT GROUP, LLC, ET AL.
## *v.* WATER AND SEWER COMMISSION OF THE TOWN OF EAST LYME
### (AC 39804)
### (AC 39806)

DiPentima, C. J., and Alvord and Bear, Js.

*Syllabus*

The plaintiff developers appealed to the trial court from the decision of the defendant Water and Sewer Commission of the Town of East Lyme granting in part an application the plaintiffs had filed for a determination of sewer capacity, in which they had requested that 118,000 gallons per day of the town's sewer treatment capacity be reserved for their proposed housing development. After a prior appeal to the trial court had twice been remanded for further proceedings before the commission, the commission had allocated 14,434 of the requested sewer treatment capacity to the plaintiffs, and the plaintiffs again appealed to the trial court. The court granted the plaintiffs' motion to supplement the record and to conduct discovery regarding a decision by the commission's administrator to approve a sewer connection application by G, which was developing a similarly situated apartment complex where over 160,000 gallons of sewer treatment capacity was contemplated. The court also granted the petition to intervene filed by certain intervenors, which had expressed environmental concerns about the plaintiffs' development. Thereafter, the matter was tried to the court, which concluded that the commission abused its discretion in its assessment of the sewer treatment capacity available for the plaintiffs' development and rendered judgment sustaining the plaintiffs' appeal. The commission and the intervenors, on the granting of certification, filed separate appeals to this court. *Held*:

1. The commission could not prevail on its claim that the trial court abused its discretion by admitting the supplemental evidence concerning G: the statute pertaining the record in an appeal from a decision by the commission (§ 8-8 [k] [2]) allows any party to introduce evidence in addition to the contents of the record if it appears to the court that additional testimony is necessary for the equitable disposition of the appeal, and here, the evidence concerning G established that, although the commission concluded that it did not have sufficient capacity to grant the plaintiffs' application for up to 118,000 gallons per day, G had effectively been granted an allocation of approximately 166,000 gallons per day following the approval of its sewer connection permit, which was relevant evidence for the court to be able to determine whether the plaintiffs had been treated inequitably by the commission as compared to G; moreover, the plaintiffs did not have the opportunity to present the evidence concerning G to the commission during any of their prior proceedings before the commission, and given when the plaintiffs' learned of the evidence and that such evidence could have influenced the commission's decision regarding the plaintiffs' application, their motion to supplement the record was their first reasonable opportunity to bring the that evidence to the attention of the court and the commission.

2. The commission's claim that the court improperly concluded that the commission abused its discretion by allocating to the plaintiff 14,434 gallons per day of sewer treatment capacity was unavailing:

   a. The trial court, in reaching its decision to sustain the plaintiff's appeal, did not abuse its discretion by disregarding certain factors outlined by our Supreme Court in *Forest Walk, LLC* v. *Water Pollution Control Authority* (291 Conn. 271) with regard to sewage capacity; although the commission claimed that the law of the case doctrine required the application of those factors by the trial court, which previously, in a remand order, had indicated that with regard to capacity, under the substantial evidence test the commission had to consider those factors,

at the time the trial court issued that remand order it was not aware of the evidence relating to G, which established new and overriding circumstances, and, thus, the court properly exercised its discretion in disregarding those factors.

b. The trial court did not act unreasonably, illegally or in abuse of its discretion when it sustained the plaintiffs' appeal and remanded the matter to the commission; that court having properly admitted the evidence relating to G, in reaching its decision on the plaintiffs' appeal it was free to consider that evidence, which demonstrated that the record, as supplemented, did not reasonably support the conclusion of the commission to grant a 14,434 gallon daily allocation, that the commission had an available capacity of 358,000 gallons per day, less the 166,000 gallons per day that was effectively allocated to G, and that an administrator of the commission was aware of G's capacity need and the existence of the plaintiffs' then pending application and nevertheless approved G's connection application without making a determination of the impact of the grant to G on the plaintiffs' application in light of the remaining capacity available to the town and without applying the factors set forth in *Forest Walk*, *LLC*, to G's application, and, therefore, on the basis of the record, the court reasonably could have determined that the commission had treated the plaintiffs inequitably and that an injustice had been done.

Argued April 10—officially released August 21, 2018

*Procedural History*

Appeal from a decision by the defendant commission granting in part the plaintiffs' application for sewer treatment capacity determination, brought to the Superior Court in the judicial district of New London and transferred to the judicial district of Hartford, Land Use Litigation Docket, where the court, *Hon. Henry S. Cohn*, judge trial referee, granted the plaintiffs' motion to supplement the record; thereafter, the court granted the petition to intervene filed by the Friends of the Oswegatchie Hills Nature Preserve, Inc., et al.; subsequently, the matter was tried to the court; judgment sustaining the plaintiffs' appeal, from which the defendant and the intervenors, on the granting of certification, filed separate appeals to this court. *Affirmed*.

*Mark S. Zamarka*, with whom, on the brief, was *Edward B. O'Connell*, for the appellant in AC 39804 (defendant).

*Roger F. Reynolds*, with whom were *John M. Looney*, *Jr.*, and, on the brief, *Andrew W. Minikowski*, for the appellants in AC 39806 (intervenors).

*Timothy S. Hollister*, with whom was *Beth Bryan Critton*, for the appellees in both appeals (plaintiffs).

*Opinion*

BEAR, J. This chapter of the protracted dispute between the town of East Lyme (town), and the plaintiffs, Landmark Development Group, LLC, and Jarvis of Cheshire, LLC, involves the plaintiffs' application to the defendant,[1] the town's Water and Sewer Commission (commission), for a determination of sewer treatment capacity. The commission appeals from the judgment of the Superior Court sustaining the plaintiffs' appeal and ordering the commission to grant the plaintiffs' application.[2] On appeal, the commission argues that the court (1) abused its discretion by allowing the plaintiffs to submit supplemental evidence to the court, and (2) improperly concluded that the commission abused its discretion by allocating to the plaintiffs 14,434 gallons per day in sewer treatment capacity. We affirm the judgment of the court.

The following facts and procedural history are relevant to our disposition of this appeal.[3] The plaintiffs own a 236 acre parcel of land in the Oswegatchie Hills area of the town, on which the plaintiffs sought to construct an 840 unit housing development. Giving rise to the present appeal is the plaintiffs' application to the commission for a determination of sewer treatment capacity, which the plaintiffs filed on June 1, 2012. In this application, the plaintiffs requested that 118,000 gallons per day of the town's sewer treatment capacity be reserved for its proposed housing development in the Oswegatchie Hills. In a December, 2012 resolution, the commission found that the plaintiffs had requested a disproportionately large amount of the town's remaining sewer treatment capacity and, therefore, denied the plaintiffs' application. The plaintiffs appealed the commission's decision to the Superior Court, which, on January 16, 2014, remanded the case to the commission for a clarification of its 2012 resolution (first remand). Specifically, the court sought clarification as to the amount of capacity the commission was willing to allocate to the plaintiffs and a justification for that amount. The court also ordered that the parties report back to court on March 17, 2014.

Pursuant to the court's January, 2014 order, the commission addressed the plaintiffs' application at its February, 2014 regular meeting. Following the meeting, the commission allocated to the plaintiffs 13,000 gallons per day in sewer treatment capacity. The parties appeared before the court in May, 2014, to resolve, inter alia, whether the commission's allocation of 13,000 gallons per day was an abuse of discretion. On June 23, 2014, the court sustained the plaintiffs' appeal and remanded the matter to the commission (second remand). In reaching this conclusion, the court relied on *Forest Walk, LLC* v. *Water Pollution Control Authority*, 291 Conn. 271, 968 A.2d 345 (2009),[4] and *Dauti Construction, LLC* v. *Water & Sewer Authority*, 125 Conn. App.

652, 10 A.3d 84 (2010), cert. denied, 300 Conn. 924, 15 A.3d 629 (2011). The court found that the commission's allocation of 13,000 gallons per day was "inappropriately low" for the following reasons: (1) the record did not indicate a specific amount of available capacity before considering the plaintiffs' application; (2) the commission made no finding regarding the area of the plaintiffs' development versus the land area of the town; (3) the commission based its decision on data that was not current; (4) none of the commission's capacity for possible future development had been requested since the reserve for future development was created in 2004; and (5) the plaintiffs requested only a small amount of the commission's remaining capacity.

At its October 28, 2014 regular meeting, the commission again considered the plaintiffs' application. On the basis of the factors set out in *Forest Walk, LLC* v. *Water Pollution Control Authority*, supra, 291 Conn. 295–96 (*Forest Walk* factors); see footnote 4 of this opinion; the commission derived a formula to determine what it considered to be an appropriate sewer capacity allocation for the plaintiffs. The formula provided: 358,000 gallons per day of available capacity divided by 5853 total acres of the town, is equal to X divided by 236 acres owned by the plaintiffs, where X equals the appropriate capacity to allocate to the plaintiffs. Application of this formula determined that 14,434 gallons per day of sewer treatment capacity was an appropriate allocation. The plaintiffs again appealed the commission's decision to the Superior Court.

On July 6, 2016, the court issued a memorandum of decision again remanding the matter to the commission (third remand). In its memorandum of decision, the court noted the following relevant procedural history: "In the present action, which was commenced on November 24, 2014, the plaintiffs . . . ask the court to review a grant of capacity of 14,434 gallons per day to the plaintiffs by the [commission]. On February 19, 2015, the plaintiffs filed their appeal brief. On March 16, 2015, the [commission] . . . filed its appeal brief. On March 30, 2015, the plaintiffs filed a motion for permission to supplement the record in an administrative appeal. The court heard oral argument on April 2, 2015. On the same day, the court granted the plaintiffs' request, but only as to exhibit C, a letter from Mark S. Zamarka.

"On July 23, 2015, the plaintiffs filed a motion to conduct further discovery [including the taking of a] deposition and to supplement the record. Specifically, the plaintiffs asked the court for permission to take the deposition of the [commission's] administrator, Bradford Kargl, regarding the approval of the connection application by Gateway (a similarly-situated apartment complex being developed) where over 160,000 gallons per day capacity was contemplated. The motion was

granted by the court on September 8, 2015. The deposition revealed that although Kargl was aware of the Gateway capacity need . . . and had a duty to monitor this need . . . he approved the connection application without making a capacity determination . . . and without further reference to the [commission]."

Thereafter, the court stated: "In light of the supplemental evidence, the court concludes that there is at least 200,000 gallons per day capacity (358,000 gallons per day less 160,000 gallons per day to Gateway) for the entire sewer system. The [commission] had broad discretion in determining capacity, but the [commission] was obligated to consider capacity when it approved [Gateway's] connection application . . . . As to the plaintiffs, the court finds that with the large amount of capacity remaining, the capacity figure of 14,434 gallons per day is excessively low. There is an abuse of discretion that the [commission] must correct. Although the [commission] is not required to grant the plaintiffs their request for 118,000 gallons per day, the capacity figure of 14,434 gallons per day is insufficient in view of the present remaining capacity of at least 200,000 gallons per day, and in view of the 160,000 gallons per day that was approved for Gateway. In reconsidering the allocation of the sewer capacity, the [commission] must comply with applicable sewer statutes, regulations and ordinances, and the [commission] should take into account the demands of the plaintiffs' sewer project and the effect on remaining capacity. Nevertheless, the [commission] must provide the plaintiffs with sufficient capacity to further the development of their project, and, as such, the [commission] may not settle on a figure for capacity that would completely foreclose the development of the plaintiffs' project." (Footnotes omitted.) This appeal followed.

I

The first issue that we must resolve is whether the court abused its discretion by allowing the plaintiffs to submit supplemental evidence (Gateway evidence) pursuant to General Statutes § 8-8 (k) (2). The commission argues that the Gateway evidence concerned a sewer connection permit, which does not require a determination of sewer treatment capacity and is a matter that the commission does not handle, rendering the evidence irrelevant and unnecessary for the equitable disposition of the appeal.

The abuse of discretion standard governs our review of a trial court's decision to admit supplemental evidence under § 8-8 (k). See *Parslow* v. *Zoning Board of Appeals*, 110 Conn. App. 349, 353–54, 954 A.2d 275 (2008). "When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . We will reverse the trial court's rul-

ing only if it could not reasonably conclude as it did. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . We do not . . . determine whether a conclusion different from the one reached could have been reached." (Citations omitted; internal quotation marks omitted.) Id., 354.

Section 8-8 (k) provides in relevant part: "The court shall review the proceedings of the board and shall allow any party to introduce evidence in addition to the contents of the record if . . . (2) it appears to the court that additional testimony is necessary for the equitable disposition of the appeal." See also *Clifford* v. *Planning & Zoning Commission*, 280 Conn. 434, 447, 908 A.2d 1049 (2006) ("[a]n appeal from an administrative tribunal should ordinarily be determined upon the record of that tribunal, and only when that record fails to present the hearing in a manner sufficient for the determination of the merits of the appeal, or when some extraordinary reason requires it, should the court hear evidence" [internal quotation marks omitted]). " '[A]llowance at trial of additional evidence under the concept of evidence "necessary for the equitable disposition of the appeal," under [§] 8-8 (k) [(2)], has generally received a restrictive interpretation to avoid review of the agency's decision based in part on evidence not presented to the agency initially.' " *Gevers* v. *Planning & Zoning Commission*, 94 Conn. App. 478, 489, 892 A.2d 979 (2006).

Here, the Gateway evidence was necessary for the equitable disposition of the appeal. The Gateway evidence established that, even though the commission concluded, after it applied the *Forest Walk* factors, that it did not have sufficient capacity to grant the plaintiffs' application for up to 118,000 gallons per day, Gateway had, in effect, been granted, without application of the *Forest Walk* factors,[5] an allocation of approximately 166,000 gallons per day following the approval of its connection permit. The Gateway evidence, therefore, was relevant for the court to be able to determine that the plaintiffs, when compared to Gateway, had been treated inequitably by the commission. Unlike Gateway, which had been able to build its development, the plaintiffs, because of the commission's 14,434 gallon per day allocation, did not have sufficient capacity to satisfy the estimated sewage requirements of their projected 840 unit development, despite the existence of adequate available capacity to grant the plaintiffs' request of up to 118,000 gallons per day.[6]

Moreover, the plaintiffs did not have the opportunity to present the Gateway evidence to the commission during the initial hearing, the first remand, or the second remand. Our review of the record shows that the events concerning Gateway occurred in 2014 and 2015, and that the plaintiffs became aware of the Gateway evi-

dence in 2015. Therefore, when the plaintiffs filed their motion under § 8-8 (k) (2) in March, 2015, it was their first reasonable opportunity to bring the Gateway evidence to the court's and the commission's attention. Accordingly, because the Gateway evidence could have influenced the commission's decision regarding the plaintiffs' application, and the plaintiffs sought to introduce this evidence at the earliest opportunity, the court did not abuse its discretion by granting the plaintiffs' motion to supplement the record. See *Clifford* v. *Planning & Zoning Commission*, supra, 280 Conn. 449 ("[t]o penalize the plaintiff for the absence in the record of documents that could have affected the commission's decision on the site plan application, when the plaintiff had no reasonable opportunity to bring such documents to the attention of the commission, would be simply unfair and not in accordance with basic principles of equity").[7]

## II

The commission's second claim on appeal is that the court improperly concluded that it abused its discretion by allocating to the plaintiffs 14,434 gallons per day of sewer treatment capacity. Specifically, the commission argues that the court erred because it disregarded its ruling from a prior remand concerning the application of the *Forest Walk* factors. See footnote 4 of this opinion. The commission also argues that the court erred by basing its decision, at least in part, on the supplemental evidence admitted pursuant to § 8-8 (k) (2) and by holding that the commission was obligated to consider the Gateway evidence in reaching its decision on the plaintiffs' application. We address those arguments in turn.

## A

The commission argues that the trial court's ruling regarding application of the *Forest Walk* factors "constitutes an interlocutory ruling that should have been treated as the law of the case in subsequent proceedings." We disagree.

"We consider whether a court correctly applied the law of the case doctrine under an abuse of discretion standard. The law of the case doctrine provides that [w]here a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, *in the absence of some new or overriding circumstance.*" (Emphasis added; internal quotation marks omitted.) *Perugini* v. *Giuliano*, 148 Conn. App. 861, 879–80, 89 A.3d 358 (2014).

Here, the court did not abuse its discretion by disregarding the *Forest Walk* factors in reaching its decision to sustain the plaintiffs' second appeal and remand the matter, for the third time, to the commission. In the court's June 23, 2014 remand order, it acknowledged

that *Forest Walk, LLC,* "indicate[s]" that, "with regard to capacity, under the substantial evidence test, the commission must consider" the four factors. At the time the court issued its June, 2014 remand order, however, it was not aware of the Gateway evidence. In light of the Gateway evidence—which established new or overriding circumstances—the court properly exercised its discretion in disregarding the *Forest Walk* factors, sustaining the plaintiffs' appeal, and remanding the matter to the commission.[8]

B

The commission next argues that the court improperly concluded that it abused its discretion by allocating to the plaintiffs 14,434 gallons per day of sewer capacity. Specifically, the commission argues that the court improperly (1) concluded that it was obligated to consider the Gateway evidence in deciding the plaintiffs' application, and (2) based its decision, at least in part, on the Gateway evidence.

"In considering an application for sewer service, a water pollution control authority performs an administrative function related to the exercise of its powers. . . . When a water pollution control authority performs its administrative functions, a reviewing court's standard of review of the [authority's] action is limited to whether it was illegal, arbitrary or in abuse of [its] discretion . . . . Moreover, there is a strong presumption of regularity in the proceedings of a public agency, and we give such agencies broad discretion in the performance of their administrative duties, provided that no statute or regulation is violated. . . .

"With respect to factual findings, a reviewing court is bound by the substantial evidence rule, according to which, [c]onclusions reached by [the authority] must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the [authority]. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the [authority] supports the decision reached. . . . If a trial court finds that there is substantial evidence to support a [water pollution control authority's] findings, it cannot substitute its judgment as to the weight of the evidence for that of the [authority]. . . . If there is conflicting evidence in support of the [authority's] stated rationale, the reviewing court . . . cannot substitute its judgment for that of the [authority]. . . . The [authority's] decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given. . . . Accordingly, we review the record to ascertain whether it contains such substantial evidence and whether the decision of the defendant was rendered in an arbitrary or discriminatory fashion." (Citations omitted; footnote omitted;

internal quotation marks omitted.) *Forest Walk, LLC* v. *Water Pollution Control Authority*, supra, 291 Conn. 285–87. We review the court's decision to determine if, when reviewing the decision of the administrative agency, it acted unreasonably, illegally, or in abuse of its discretion. See *Wasfi* v. *Dept. of Public Health*, 60 Conn. App. 775, 781, 761 A.2d 257 (2000), cert. denied, 255 Conn. 932, 767 A.2d 106 (2001).

On the basis of our previous conclusions in this opinion—i.e., that the court did not abuse its discretion by (1) supplementing the record with the Gateway evidence and (2) disregarding the *Forest Walk* factors— we conclude that the court did not act unreasonably, illegally, or in abuse of its discretion when it sustained the plaintiffs' appeal and remanded the matter to the commission. Because the court properly admitted the Gateway evidence, it was free to consider that evidence in reaching its decision on the plaintiffs' appeal. That evidence demonstrated that the record, as supplemented, did not reasonably support the conclusion of the commission to grant a 14,434 gallon daily allocation. The evidence in the record as supplemented established that the commission had an available capacity of 358,000 gallons per day, less the 166,000 gallons per day that was effectively allocated to Gateway. There also was evidence that an administrator of the commission, Kargl, was aware of Gateway's capacity need and the existence of the plaintiffs' then pending application. Kargl, however, approved Gateway's application without making a determination of the impact of the grant to Gateway on the plaintiffs' application in light of the remaining capacity available to the town. On the basis of this evidence, the court properly determined that the commission abused its discretion when it granted to the plaintiffs only 14,434 gallons per day of its 118,000 gallons per day request, despite allowing, without applying the *Forest Walk* factors, Gateway's 166,000 gallons per day connection permit application. On the basis of the record as supplemented, the court, in the exercise of its discretion, could reasonably conclude that the commission treated the plaintiffs inequitably and that an injustice had been done. See *Parslow* v. *Zoning Board of Appeals*, supra, 110 Conn. App. 354.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] On February 20, 2015, two entities, Friends of the Oswegatchie Hills Nature Preserve, Inc., and Save the River-Save the Hills, Inc., submitted a verified petition to intervene, pursuant to General Statutes § 22a-19, in the appeal between the plaintiffs and the commission. In the petition, the entities argued, inter alia, that the plaintiffs' "application involves conduct which is reasonably likely to have the effect of unreasonably polluting, impairing, or destroying the public trust in the air, water and other natural resources of the State of Connecticut." The petition highlighted several environmental considerations and noted that the Superior Court had found previously that the plaintiffs' development posed a risk of considerable harm to the Oswegatchie Hills. On March 18, 2015, the court granted the petition to intervene. Both the commission and the intervenors have appealed from the court's judgment sustaining the plaintiffs' appeal. The commission's

appeal is assigned docket number AC 39804. The intervenors' appeal is assigned docket number AC 39806. The intervenors did not appear in the proceedings before the commission to determine the sewer treatment capacity available for the use of the plaintiffs, and did not submit any evidence in support of their claims. Because the intervenors' claims on appeal essentially are the same as the claims raised by the commission, and rely on the record of the proceedings before the commission made by the plaintiffs and the commission witnesses, we address both appeals in a single opinion.

[2] Initially, the plaintiffs contended that the judgment of the trial court was not an appealable final judgment, while the commission argued that it was. At oral argument before this court, the plaintiffs' counsel conceded that the court's July, 2016 decision was an appealable final judgment. We agree and note that "[a] judgment of remand is final if it so concludes the rights of the parties that further proceedings cannot affect them. . . . A judgment of remand is not final, however, if it requires [the agency to make] further evidentiary determinations that are not merely ministerial." (Citations omitted; internal quotation marks omitted.) *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 130, 653 A.2d 798 (1995). Here, the court's judgment so concluded the rights of the parties because it ordered that the commission *must* grant the plaintiffs' application.

[3] The dispute between the plaintiffs and the town has been ongoing for approximately eighteen years. Most of the facts and procedural history related to the protracted dispute are not relevant to the issues in this appeal.

[4] In its memorandum of decision, the court noted that *Forest Walk, LLC*, "indicate[s] the following to the court with regard to this appeal . . . . With regard to capacity, under the substantial evidence test, the commission must consider [1] the remaining capacity for the entire town, [2] the land area represented by the property versus the available land area in the town, [3] the safe design standards for public sewers, and [4] the percentage of allocation versus the total remaining capacity." We refer to these as the *Forest Walk* factors.

[5] Gateway, unlike the plaintiffs, did not make an allocation application prior to constructing its development.

[6] The court found "that with the large amount of capacity remaining, the capacity figure of 14,434 gallons per day is excessively low. There is an abuse of discretion that the [commission] must correct. Although the [commission] is not required to grant the plaintiffs their request for 118,000 gallons per day, the capacity figure of 14,434 gallons per day is insufficient in view of the present remaining capacity of at least 200,000 gallons per day, and in view of the 160,000 gallons per day that was approved for Gateway. . . . Nevertheless, the [commission] must provide the plaintiffs with sufficient capacity to further the development of their project, and, as such, the [commission] may not settle on a figure for capacity that would completely foreclose the development of the plaintiffs' project." From this finding, we can infer that the court also found that the grant of 14,434 gallons per day foreclosed the plaintiffs from moving forward with their development.

[7] Our Supreme Court's decision in *Clifford* v. *Planning & Zoning Commission*, supra, 280 Conn. 434, informs our resolution of this issue. In *Clifford*, the defendant commission (defendant) approved the proposal of the defendant construction company (company) to store dynamite on the company's property. Id., 437. The plaintiff, Thomas Clifford, appealed to the trial court, and moved under § 8-8 (k) (2) to introduce supplemental evidence. Id., 437–38. Specifically, Clifford sought to introduce prior site plan approvals for the property at issue, which established, inter alia, that the storage of hazardous and demolition materials on the property was expressly prohibited and that before any further development could take place on the property, the company would need the approval of the inlands wetlands commission. Id., 445–46. The trial court denied the motion. Id., 438.

On appeal, our Supreme Court concluded that the trial court's denial of Clifford's motion under § 8-8 (k) (2) was an abuse of discretion. Id., 445. The court held that the additional evidence was necessary for the equitable disposition of the appeal for two reasons. Id., 448. First, "the evidence that [Clifford] sought to introduce consisted of information that, viewed on its face, could well have affected the [defendant's] consideration of [the company's] site plan application if it had been brought to the [defendant's] attention, because the [evidence] revealed conditions that the [defendant] itself previously had imposed upon [the company] . . . ." Id. Second, the motion under § 8-8 (k) (2) was Clifford's "first reasonable opportunity to bring to the court's attention the limitations on the use of [the company's]

property that may well have affected the approval of the site plan applica-
tion." Id., 448–49.

[8] The court expressly stated that part of the Gateway evidence, specifically,
the deposition of Kargl, established facts that made this case distinguishable
from *Forest Walk, LLC.*