# DAUTI CONSTRUCTION, LLC *v.* WATER AND SEWER AUTHORITY OF THE TOWN OF NEWTOWN
## (AC 31496)

DiPentima, C. J., and Alvord and Pellegrino, Js.

Argued September 1—officially released December 28, 2010

*David L. Grogins*, with whom was *Barbara M. Schellenberg*, for the appellant (defendant).

*Timothy S. Hollister*, with whom was *Ryan K. McKain*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant, the water and sewer authority of the town of Newtown, appeals from the judgment of the trial court sustaining the appeal of the plaintiff, Dauti Construction, LLC, from the defendant's decision denying the plaintiff's application for a permit to connect to the town's public sewer system. On appeal, the defendant claims that the court improperly determined that its regulation that allocated sewer capacity pursuant to a priority matrix was facially invalid because it was not rationally related to public health, safety and welfare concerns. Because we conclude that the priority matrix as applied to the plaintiff's application was invalid, we affirm the judgment of the trial court.

The record reveals the following facts and procedural history. The plaintiff, a limited liability company, owns a parcel of land located at 95 Church Hill Road in Newtown and is the contract purchaser of an adjacent parcel of land located at 99 Church Hill Road. The combined area of the two parcels (property) is approximately four and one-half acres. In February, 2006, the plaintiff

submitted an application to the planning and zoning commission of the town of Newtown (commission) for a zone change to construct twenty-three residential units on the portion of the property located at 95 Church Hill Road.

The defendant is the agency designated by the town to carry out the duties of a municipal water pollution control authority as set forth in chapter 103 of the General Statutes. Pursuant to General Statutes § 7-246,[1] the town maintains a public sewer system controlled by the defendant that services a portion of the town. The plaintiff's property is located entirely within the town's central sewer district. In July, 2006, after having received a preliminary request for sewer service for the plaintiff's proposed development, the defendant sent a letter to the plaintiff and all town boards and departments recommending the denial of the plaintiff's application for a zone change. In that letter, the defendant indicated that it had not allocated any sewer capacity for potential development that did not meet current zoning classifications and that the proposed zone change would allow sewer discharge at an amount greater than the amount permitted in its priority matrix. In August, 2006, the commission denied the plaintiff's application.

[1] General Statutes § 7-246 provides in relevant part: "(a) Any municipality may, by ordinance, designate its legislative body . . . or any existing board or commission, or create a new board or commission to be designated, as the water pollution control authority for such municipality. . . .

"(b) Each municipal water pollution control authority designated in accordance with this section may prepare and periodically update a water pollution control plan for the municipality. Such plan shall designate and delineate the boundary of: (1) Areas served by any municipal sewerage system; (2) areas where municipal sewerage facilities are planned and the schedule of design and construction anticipated or proposed; (3) areas where sewers are to be avoided; (4) areas served by any community sewerage system not owned by a municipality; (5) areas to be served by any proposed community sewerage system not owned by a municipality; and (6) areas to be designated as decentralized wastewater management districts. . . ."

Following the commission's denial, the plaintiff then signed a contract to purchase the adjacent land at 99 Church Hill Road.[2] With the combined area of its property now totaling approximately four and one-half acres, the plaintiff submitted a three part affordable housing application to the commission in October, 2006, for a zoning amendment, map change and site plan approval in connection with a proposed development of twenty-six residential units. The commission again requested review and comment from the defendant with respect to the plaintiff's proposal. By memorandum dated January 16, 2007, the defendant responded: "It is . . . clear that the proposed development does not meet current zoning as defined in the [water pollution control] [p]lan. The [p]lan makes clear that the term 'current' for zoning refers 'to the adoption date of this [priority] matrix, April 28, 1994.' [The plaintiff] has filed applications with [the commission] seeking amendments to the zoning regulations and a zone change for the subject property that would increase the number of units allowed per acre for the subject property. As such, there can be no disagreement that the [plaintiff's] proposal does not meet zoning requirements as they existed on April 28, 1994." The letter concluded with the statement that "there is insufficient sewer capacity for the development of the subject property as proposed by the [plaintiff]." On April 5, 2007, the commission denied the plaintiff's application for the primary reason that the plaintiff had failed to provide an adequate sewage disposal plan to meet the need of the future residents of the development. The plaintiff appealed from the commission's decision.[3]

[2] The 99 Church Hill Road property included an existing multifamily dwelling with an existing sewer connection.

[3] The plaintiff filed an administrative appeal from the commission's decision in the trial court. The court sustained the appeal and remanded the matter to the commission with direction to effect certain modifications to the proposed regulations and plans. This court granted the commission's petition for certification to appeal, and our decision in that appeal was

On August 7, 2007, pursuant to General Statutes § 7-246a (a) (2),[4] the plaintiff submitted a formal application to the defendant, requesting a permit to connect to the public sewer system for a twenty-six unit residential development on the property. A public hearing on the plaintiff's application was held on August 16 and September 20, 2007. At the conclusion of the public hearing, the defendant denied the plaintiff's application for the following reason: "[I]t fails to meet [the defendant's] regulations in that it does not qualify for any category of the priority matrix for allocation of remaining sewer capacity." The plaintiff filed an appeal from the defendant's decision in the trial court pursuant to § 7-246a (b).[5]

The plaintiff's appeal from the commission's decision denying its affordable housing application was scheduled for oral argument on the same date and before the same judge, *Tanzer, J.*, as the present action. On June 1, 2009, the court issued its memorandum of decision in this case and sustained the plaintiff's appeal. It concluded that the defendant's regulation, allocating sewer capacity on the basis of the zoning classification of the plaintiff's property in 1994, was invalid. The court found

released on the same date as this opinion. See *Dauti Construction, LLC* v. *Planning & Zoning Commission*, 125 Conn. App. 665, 10 A.3d 92 (2010).

[4] General Statutes § 7-246a (a) provides: "Whenever an application or request is made to a water pollution control authority or sewer district for (1) a determination of the adequacy of sewer capacity related to a proposed use of land, (2) approval to hook up to a sewer system at the expense of the applicant, or (3) approval of any other proposal for wastewater treatment or disposal at the expense of the applicant, the water pollution control authority or sewer district shall make a decision on such application or request within sixty-five days from the date of receipt, as defined in subsection (c) of section 8-7d, of such application or request. The applicant may consent to one or more extensions of such period, provided the total of such extensions shall not exceed sixty-five days."

[5] General Statutes § 7-246a (b) provides: "Notwithstanding any other provision of the general statutes, an appeal may be taken from an action of a water pollution control agency or sewer district pursuant to subsection (a) of this section in accordance with section 8-8."

that the evidence in the record indicated that the denial was based on a mathematical or mechanical application of the priority matrix and that there had been no evidence demonstrating that the priority matrix was rationally related to public health, safety or welfare. The defendant filed the present appeal after this court granted its petition for certification.

The defendant claims that the court improperly determined that the defendant's sewer use regulation, which allocated sewer capacity on the basis of a priority matrix, was facially invalid because it was not rationally related to public health, safety and welfare concerns. The following additional facts and procedural history are relevant to the resolution of this claim. The defendant adopted a water pollution control plan (plan) on March 9, 1995, which was amended on June 24, 1999. The stated purpose of the plan was "to designate and delineate the boundaries of areas to be served by [t]own sewers and areas where sewers are to be avoided and to describe the policies and programs to be carried out to control surface and groundwater pollution problems." The plan further provides that the town did not intend to extend sewers to areas outside of the sewer service area, and it incorporates a priority matrix[6] for the central sewer service area to "ensure that the limited treatment plant capacity of 332,000 [gallons per day

---

[6] The following is the priority matrix as it appears in the town's water pollution control plan: "1st priority: 260,000 [gallons per day]—Existing development within the sewer service area.

"2nd priority: 30,000 [gallons per day]—Potential development meeting current zoning within the sewer service area.

"3rd priority: 4,000 [gallons per day]—Existing development along sewer transmission [routes].

"4th priority: 21,000 [gallons per day]—Existing development outside the sewer service area identified as areas of concern in the Facilities Plan and reasonably close to the sewer service area.

"5th priority: 17,000 [gallons per day]—Other existing development outside the sewer service area but in close proximity."

would] be allocated in a logical manner." The plan clarifies that the terms "current" and "existing" in the priority matrix refer to the adoption date of the matrix, April 28, 1994. Pursuant to its authority under General Statutes § 7-247 (a), the defendant also adopted sewer use regulations, which initially were issued on August 13, 1997, and were revised on September 27, 2001. Those regulations reference the plan and the 1994 priority matrix.

Accordingly, as of April 28, 1994, all developed and undeveloped properties in the town were allocated a specific gallonage per day of the wastewater treatment plant's capacity based on the zoning classifications of the properties on April 28, 1994. The plaintiff's property, which was located in a one acre zone and was more than four acres but less than five acres in size, was assigned 850 gallons per day and 212.5 gallons of capacity per equivalent dwelling unit. The plaintiff's August 7, 2007 application sought a sewer connection permit for twenty-six dwelling units to discharge domestic sewage at a rate of 5525 gallons per day based on the defendant's stated discharge rate of 212.5 gallons per day per dwelling unit. The defendant concluded that the proposed amount of discharge exceeded the amount allowed by the 1994 priority matrix and denied the application. The court concluded that the defendant's stated reason for its denial was invalid.

Although the defendant claims that the court improperly determined that its regulation incorporating the 1994 priority matrix was *facially invalid*, we conclude that the issue to be determined by this court is whether the plaintiff's appeal was properly sustained because the 1994 priority matrix was invalid *as applied* to the plaintiff's proposal. We reach this conclusion for two reasons. First, in the plaintiff's prayer for relief, it specifically requests, inter alia, that the court render judgment declaring "invalid the portions of the . . . [r]egulations

that regulate individual connections to the sewer system based on zoning categories or land use designations adopted by the [commission], *as applied to the application* of [the plaintiff] for approval to hook up to the Newtown sewer system . . . ." (Emphasis added.) Second, at the hearing before the trial court, counsel for the plaintiff stated: "We have no problem with the regulations, we're not trying to overturn the regulations, we're not—we're not asking the court to declare . . . null and void any of the [defendant's] plans or ordinances or enabling regulations. What we're asking the court to look at is the way the [defendant] interprets its own regulations, *how they apply them to the [plaintiff's] case*, and to determine that they did in fact make a . . . zoning based decision on that application." (Emphasis added.)

Because the plaintiff's complaint and representations to the trial court clearly indicate that it was seeking a determination that the 1994 priority matrix as applied to its application was invalid, we review the claim on appeal as the claim was presented to the trial court. "Pleadings have an essential purpose in the judicial process. . . . The purpose of pleading is to apprise the court and opposing counsel of the issues to be tried . . . . For that reason, [i]t is imperative that the court and opposing counsel be able to rely on the statement of issues as set forth in the pleadings." (Citations omitted; internal quotation marks omitted.) *Somers* v. *Chan*, 110 Conn. App. 511, 528, 955 A.2d 667 (2008). It is fundamental in our law that "the right of a plaintiff to recover is limited by the allegations of the complaint . . . and *any judgment should conform to the pleadings, the issues and the prayers for relief.*" (Emphasis added; internal quotation marks omitted.) *Journal Publishing Co.* v. *Hartford Courant Co.*, 261 Conn. 673, 686, 804 A.2d 823 (2002). "The [trial] court is not permitted to decide issues outside of those raised in the pleadings."

(Internal quotation marks omitted.) *Gaffey* v. *Gaffey,* 91 Conn. App. 801, 804 n.1, 882 A.2d 715, cert. denied, 276 Conn. 932, 890 A.2d 572 (2005).

Having concluded that we will review the defendant's claim in the context of whether the court improperly determined that the 1994 priority matrix was invalid as applied to the plaintiff's proposed development, we next consider the merits of that claim. The plaintiff had argued, and the trial court agreed, that a sewer agency has only those powers granted to it by the legislature, and those powers do not include the authority to regulate the use of land on the basis of zoning considerations. The court stated: "[A]lthough the allocation of sewer capacity was consistent with the zoning of the plaintiff's property at the time the priority matrix was adopted, the water pollution control plan and the priority matrix therein do not allow for changes in zoning to affect the allocation of sewer capacity, essentially restricting the density of development to that for which it was zoned in 1994 . . . ." Accordingly, the court concluded that the defendant's denial of the plaintiff's application for the reason that it failed to meet the limits set forth in the 1994 priority matrix was improper.

We begin our analysis by setting forth the standard of review. "In considering an application for sewer service, a water pollution control authority performs an administrative function related to the exercise of its powers. . . . When a water pollution control authority performs its administrative functions, a reviewing court's standard of review of the [authority's] action is limited to whether it was illegal, arbitrary or in abuse of [its] discretion . . . . Moreover, there is a strong presumption of regularity in the proceedings of a public agency, and we give such agencies broad discretion in the performance of their administrative duties, provided that no statute or regulation is violated." (Citations omitted; internal quotation marks omitted.) *Forest*

*Walk, LLC* v. *Water Pollution Control Authority*, 291 Conn. 271, 285–86, 968 A.2d 345 (2009).

Our Supreme Court has recognized that water pollution control authorities are quasi-municipal corporations created pursuant to statute that may exercise "the power to acquire, construct, maintain, supervise, manage and operate a sewer system and perform any act pertinent to the collection, transportation and disposal of sewage." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Sewer Commission*, 270 Conn. 409, 425, 853 A.2d 497 (2004). In defining the powers and duties of such authorities, § 7-247 (a) provides, inter alia, that they "may establish and revise rules and regulations for the supervision, management, control, operation and use of a sewerage system, including rules and regulations prohibiting or regulating the discharge into a sewerage system of any sewage or any stormwater runoff which in the opinion of the water pollution control authority will adversely affect any part or any process of the sewerage system . . . ." General Statutes § 7-247 (a). Nevertheless, "[a]n administrative agency, in making rules and regulations, must act within its statutory authority, within constitutional limitations, and in a lawful and reasonable manner." (Internal quotation marks omitted.) *Queach Corp.* v. *Inland Wetlands Commission*, 258 Conn. 178, 193 n.22, 779 A.2d 134 (2001).

The 1994 priority matrix at issue in the present case clearly is zoning based in its language and as applied to the plaintiff's application. Because the property is located in a sewer service area and the application proposes new development, the defendant determined that the proposal failed to fall within any of the five categories affording priority for a requested hookup to the sewer system. The second category of priority in the matrix is the only category that addresses "potential" as opposed to "existing" development. In order to fall

within the second category, the plaintiff's proposal would be entitled to priority only if its "potential development [meets] current zoning within the sewer service area." As previously noted, current zoning refers to the zoning classification of the plaintiff's property in April, 1994. At that point in time, the plaintiff would have been permitted the equivalent of one residential unit per acre, for a total of four units. Even if, sometime after 1994, the town's zoning authority had decided to change the plaintiff's property to a zoning classification that permitted greater density, the plaintiff still would not have been able to meet the parameters of the defendant's priority matrix. As conceded by the defendant, the priority matrix was tied to zoning classifications as they existed in 1994, and any subsequent zoning changes by the commission after the adoption of that matrix would be of no consequence and totally ignored by the defendant when considering sewer connection permit applications for new developments.

The 1994 priority matrix, as applied to the plaintiff's property, foreclosed any possibility of development that exceeded the equivalent of four dwelling units. As did the zoning regulations in 1994, the priority matrix regulated the density of population and the use of the plaintiff's property. "[T]he power to determine what are the needs of a town with reference to the use of the real property located in it and to legislate in such a manner that those needs will be satisfied is, by statute, vested exclusively in the zoning commission." (Internal quotation marks omitted.) *Harris* v. *Zoning Commission*, 259 Conn. 402, 425, 788 A.2d 1239 (2002). General Statutes § 8-2 (a) authorizes a *zoning commission* to "regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; *the density of population and the location and*

*use of buildings, structures and land for trade, indus-
try, residence or other purposes . . . .*" (Emphasis
added.) The legislature has not authorized water pollu-
tion control authorities to exercise those zoning pow-
ers. The defendant, in its application of the 1994 priority
matrix to the plaintiff's proposal, usurped the authority
of the commission and restricted the density and use
of the plaintiff's property.[7]

In determining the plaintiff's remedy for the defen-
dant's improper denial of its application, the court
found that "adequate capacity for twenty-six units must
exist. More importantly, the defendant has not referred
to any evidence in the record in support of a finding
that the town's sewer system lacks sufficient capacity
for the plaintiff's proposed development or that other
property owners would be deprived of sewer connec-
tions to which they are entitled." Because the only rea-
son given by the defendant for its denial of the sewer
connection permit was the failure to comply with the
regulation allocating sewer capacity based on the 1994
zoning of the plaintiff's property, the court sustained
the plaintiff's appeal.[8]

For the reasons previously discussed, we agree that
the defendant's stated reason for its denial is invalid.

---

[7] The court further noted in its memorandum of decision that "[t]he defen-
dant's allocation of sewer capacity in accordance with its priority matrix
is not supported by any engineering or health data, nor has it offered any
other evidence demonstrating that it is rationally related to the public health,
safety and welfare."

[8] We note that in the court's memorandum of decision in *Dauti Construc-
tion, LLC* v. *Planning & Zoning Commission*, Superior Court, judicial
district of New Britain, Docket No. CV-07-4014556S (June 1, 2009), which
was issued the same date as the court's decision in the present case, the
court stated: "[T]he lack of adequate sewerage no longer serves as an ade-
quate basis for the [commission's] denial in light of this court's concurrent
decision in the related appeal, *Dauti Construction, LLC* v. *Water & Sewer
Authority*, Superior Court, judicial district of New Britain, Docket No. CV-
07-4015968S, *sustaining that appeal and remanding to the [water and
sewer authority] for its approval of the plaintiff's sewer application.*"
(Emphasis added.)

Further, the defendant concedes in its brief on appeal before this court that "there currently is enough capacity for [the] plaintiff's proposed development and there was no evidence of current, identified property owners who absolutely will be deprived of sewer connections if the application is granted." Additionally, it is not disputed that the plaintiff is seeking a permit to connect to an existing sewer system; it is not requesting an extension of that system. Our case law has made a distinction between the mere connection to an existing system as opposed to construction of an extension to a sewer system. See *AvalonBay Communities, Inc.* v. *Sewer Commission,* supra, 270 Conn. 421–29. Moreover, the plaintiff has asserted—and there is nothing in the record that contradicts or challenges that assertion—that the proposal complied with all of the defendant's engineering and administrative requirements as set forth in the sewer use regulations. See *Schuchmann* v. *Milford,* 44 Conn. App. 351, 358, 689 A.2d 513, cert. denied, 240 Conn. 924, 692 A.2d 818 (1997). Thus, this is one of those relatively rare situations in which it is appropriate to order the defendant to issue the permit. When it appears that a public agency reasonably could reach only one conclusion, the court may direct that agency to do that which the conclusion requires. *Jersey* v. *Zoning Board of Appeals,* 101 Conn. App. 350, 361, 921 A.2d 683 (2007).

Although the trial court indicated, in its concurrent decision in the planning and zoning appeal, that it remanded this matter to the defendant to approve the plaintiff's application; see footnote 8 of this opinion; its memorandum of decision in this case simply indicated that the appeal was sustained. There was but one conclusion, however, that the defendant could reach, and we conclude that the trial court did order the approval of the sewer permit.

The judgment is affirmed and the case is remanded to the trial court with direction to render judgment directing the defendant to approve the plaintiff's application under terms and conditions as the defendant might reasonably prescribe in accordance with its regulations.

In this opinion the other judges concurred.