******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# SUMMIT SAUGATUCK, LLC *v.* WATER POLLUTION CONTROL AUTHORITY OF THE TOWN OF WESTPORT
## (AC 41949)

Prescott, Bright and Bear, Js.

*Syllabus*

The plaintiff appealed to the trial court from the decision of the defendant Water Pollution Control Authority of the Town of Westport denying the plaintiff's application for a sewer extension. After the matter was tried to the court, the court remanded the application for a new hearing, at which the plaintiff could produce new evidence germane to the equitable disposition of its application. Following a new hearing, the defendant again denied the plaintiff's application, and the plaintiff appealed to the trial court, which rendered judgment sustaining the second appeal, reversing the defendant's denial of the application, and remanding the application for conditional approval subject to the completion of ongoing improvements and upgrades to the sanitary sewer system. Thereafter, the defendant, on the granting of certification, appealed to this court. *Held* that the trial court improperly rendered judgment sustaining the plaintiff's appeal and remanding the matter to the defendant with direction to grant the sewer extension application, as the decision of whether to grant a conditional approval of a sewer extension application was properly left to the discretion of the defendant, and the court impermissibly substituted its own discretion and judgment for that of the defendant by overriding its decision and ordering a conditional approval of the application: the fact that a conditional approval of an application would be a viable option available to an agency in considering an application does not mean that the agency must exercise that option whenever possible and in all situations, the defendant here chose to reject the rationale relied on by the trial court in favor of a more cautious approach that required the plaintiff to file a new application once it could demonstrate that sufficient sewer capacity existed for the planned development, and the record did not support a conclusion that the defendant's decision was illegal, arbitrary or an abuse of discretion; moreover, the defendant was entitled to a presumption of regularity in its decision-making process, as it had provided the additional rationale that it was a settled policy of the defendant not to grant conditional approval of applications, there was unrebutted testimony that the defendant had not granted a conditional approval in more than thirty years, which was sufficient to demonstrate that the defendant had a practice to refrain from granting conditional approvals, and, by choosing not to do so in the present case, it was acting in accordance with its usual practices and procedures.

Argued April 22—officially released October 29, 2019

*Procedural History*

Appeal from the decision of the defendant denying plaintiff's application for a sewer extension for an affordable housing development, brought to the Superior Court in the judicial district of Stamford-Norwalk and transferred to the judicial district of Hartford, Land Use Litigation Docket, where the matter was tried to the court, *Shluger, J.*; judgment sustaining the appeal and remanding the application; thereafter, following a hearing on remand, the defendant denied the plaintiff's application, and the plaintiff appealed to the Superior Court from the denial of its application; subsequently, the court, *Shluger, J.*, rendered judgment sustaining the

appeal, from which the defendant, on the granting of certification, appealed to this court. *Reversed*; *judgment directed.*

*Peter V. Gelderman*, for the appellant (defendant).

*Timothy S. Hollister*, for the appellee (plaintiff).

*Opinion*

PRESCOTT, J. The defendant, the Water Pollution Control Authority for the Town of Westport, appeals from the judgment of the trial court sustaining the appeal of the plaintiff, Summit Saugatuck, LLC, from the defendant's decision to deny the plaintiff's application for a sewer extension to service a proposed affordable housing development. The court remanded the matter back to the defendant with direction to approve conditionally the sewer extension application subject to the completion of ongoing improvements and upgrades of capacity to the sanitary sewer system in the town of Westport (town). On appeal, the defendant claims that the trial court, by sustaining the appeal and ordering a conditional approval of the application, improperly substituted its own judgment for the reasoned and lawful discretion exercised by the defendant. We agree and, accordingly, reverse the judgment of the trial court.[1]

The record reveals the following facts and procedural history. The plaintiff owns property or options to purchase property in an area of town that is zoned for high density development to be served by the town's sewer system. The plaintiff seeks to develop its property for multifamily residential use. A sewer extension from the town's system is needed to service the planned development.

In October, 2014, the plaintiff, pursuant to General Statutes § 7-246a,[2] applied to the defendant for approval of a private sewer extension for a proposed 186 unit affordable housing development.[3] Because a proposed sewer extension is deemed a municipal improvement, the defendant referred the application to the town's planning and zoning commission (zoning commission) for a report pursuant to General Statutes § 8-24. See footnote 1 of this opinion.

On January 8, 2015, the zoning commission held a hearing on the plaintiff's application. Steven Edwards, the town's public works director at the time, testified at the hearing that the town's existing sewer system required repairs and upgrades before it could handle the additional sewage from the proposed development. Specifically, Edwards explained that replacement of a force main running under the Saugatuck River and one of the pump stations could take up to five years. Edwards thought a reasonable goal for the completion of the upgrade/repairs would be the summer of 2017.

The zoning commission issued a negative report on January 26, 2015. The plaintiff elected to withdraw its application with the defendant at that time.

The plaintiff subsequently entered into an agreement with an affiliate of the Westport Housing Authority (affiliate) pursuant to which the plaintiff would develop eighty-five market rate units and the affiliate would

develop seventy adjacent affordable housing units. On April 11, 2016, the plaintiff reapplied to the defendant to construct a private sewer extension to service this new planned development.

In June, 2016, the defendant referred the plaintiff's latest application to the zoning commission for a § 8-24 report. Following a hearing on July 7, 2016, the zoning commission again issued a negative report due to the as yet incomplete upgrades to the sewer system, which it concluded were not likely to be accomplished for another two to four years.[4] Despite the negative report, the plaintiff chose not to withdraw its application from consideration by the defendant. The defendant then held a public hearing on the plaintiff's sewer extension application on July 21, 2016. At that hearing, the plaintiff offered evidence about the projected timeline for the completion of the sewer upgrades and proposed that the defendant approve its application conditioned upon the final completion of all necessary upgrades to the sewer as well as the receipt of necessary wetlands and site plan approvals.

The defendant denied the plaintiff's application on July 27, 2016. The defendant concluded, in relevant part, that (1) the application violated a town policy that purportedly required a positive § 8-24 report from the zoning commission as a prerequisite to proceeding with a sewer extension application; (2) regardless of that policy, § 8-24 itself required a positive report from the zoning commission before the defendant could approve an application unless approval was obtained from the representative town meeting,[5] which had not occurred here; and (3) given remaining uncertainties and risks associated with the planned force main replacement and pump station upgrade, it would be unwise for the defendant to issue an approval conditioned upon the plaintiff's agreement to defer construction of the sewer extension until repairs were completed rather than simply requiring the plaintiff to wait and reapply after all necessary repairs and improvements were finished and sufficient capacity existed.

The plaintiff filed an appeal from that ruling with the Superior Court on August 31, 2016. In addition to its supporting brief, the plaintiff filed a motion for permission to supplement the record. The defendant objected to the motion to supplement and later filed its brief opposing the plaintiff's appeal. The plaintiff filed a reply brief and a second motion for permission to supplement the record. The matter was heard on April 26, 2017.

In a decision filed on August 1, 2017, the trial court sustained the plaintiff's appeal. The court determined that the negative report issued by the zoning commission pursuant to § 8-24 was only advisory in nature and in no way was binding on the defendant, and, thus, it had been improper for the defendant to rely primarily on the negative report of the zoning commission as

the basis for denying the plaintiff's sewer application, rather than considering the merits of the application.[6] Accordingly, the court remanded the application to the defendant "for a new hearing on the matter, at which [the plaintiff] may produce new evidence germane to the equitable disposition of its application."[7]

On September 27, 2017, the defendant held a hearing in accordance with the court's remand order, which was continued to October 25, 2017. Because the plaintiff's joint venture agreement with the affiliate had terminated, the plaintiff informed the defendant on remand that it was pursuing the application with respect to a new affordable housing plan that consisted of 187 units for which the plaintiff would be the sole developer.[8] The plaintiff presented evidence that the construction of the force main replacement and the upgrade to the pump station were scheduled to begin in December, 2017, and were to be completed in March, 2018. The plaintiff also submitted evidence demonstrating that all municipal, state, and federal permits for the sewer construction had issued and that the project was funded fully.

On October 25, 2017, the defendant nevertheless again denied the plaintiff's supplemented sewer extension application. It provided the following reasons for its decision: (1) "[T]he estimated date of completion of the replacement of the force main under the Saugatuck River and the upgrades to Pump Station # 2 is likely to be summer of 2018"; (2) "currently there is not sufficient capacity in the system to accommodate the proposed sewer line extension"; (3) the defendant agreed with Edwards' recommendation "against approving any project, whether conditional or not, that required more capacity than is available"; (4) the defendant, as a matter of policy, had never granted a conditional approval because "[e]vents could occur after a conditional approval that, if known at the time of approval, would have caused an application to be denied or modified," and "[t]here is no reason to grant approvals to extend a sewer prior to the time when the extension can physically be implemented"; (5) "[a]llocation of capacity prior to the completion of necessary work by the town is unfair to other developers and potential users who have been advised to wait until the work is complete to file applications"; (6) "although it is not the function of the [defendant] to consider land use issues in making its decisions (other than to the extent capacity may be affected), the application submitted by the [plaintiff] pursuant to the remand order was substantially different from the application that is the subject of the appeal"; and (7) "[the plaintiff] failed to provide a compelling reason to grant a conditional approval. The [plaintiff's] only stated reason was that it would benefit its ability to plan its project. That reason does not outweigh the public policy reasons for not granting conditional approvals (as set forth in item #4 . . .)."

The plaintiff again appealed the denial of its application to the Superior Court, arguing that its property was located in the town's sewer district and, thus, could not be developed without sewer access. The plaintiff further claimed that the record was clear that ample sewer capacity exists or soon would exist for the proposed use, there had been no showing of any engineering impediments to tying into the sewer system, and the sewer extension would be privately funded. According to the plaintiff, on those facts, the defendant had a nondiscretionary duty to grant the sewer extension application or, in the alternative, abused its discretion by failing to do so.

Following briefing, the appeal was heard on April 3, 2018.[9] The court again sustained the plaintiff's appeal and reversed the decision of the defendant. In a memorandum of decision filed on May 7, 2018, the court rejected the plaintiff's argument that the defendant had a ministerial duty to grant its extension because the plaintiff did not seek merely to connect to an existing sewer system but to construct an extension to that system, which required the defendant to exercise judgment and discretion. See *Dauti Construction, LLC* v. *Water & Sewer Authority*, 125 Conn. App. 652, 664, 10 A.3d 84 (2010) (noting that, in determining whether water pollution control authority's action was ministerial or discretionary in nature, courts distinguish between requests to connect to an existing sewer system and those seeking to construct an extension to sewer system), cert. denied, 300 Conn. 924, 15 A.3d 629 (2011). The court nevertheless agreed with the plaintiff that the defendant's denial of the sewer extension application was arbitrary and an abuse of its discretion. The court concluded that the defendant had based its decision primarily on the fact that the sewer upgrades and repairs necessary to provide the capacity for the plaintiff's proposed development had not been completed, rather than on any potential topographical or engineering considerations. Rather than render a decision on the basis of the merits of the application, the court determined that the defendant arbitrarily had decided that the application was premature and that issuing a conditional approval was against an established policy.

The court remanded the application to the defendant for a second time, now with direction that it conditionally approve the application for the project as amended, subject to the following conditions: "(1) Construction of the sewer extension may not begin until such time as the force main replacement under the Saugatuck River and the upgrade of the pump station number two are complete and the town's public works director confirms that the public sewer system has the capacity to receive, transport, and discharge to the treatment plant the sewage to be discharged from the applicant's

proposed multifamily residential development. Construction of the sewer extension includes cutting of trees and clearing of vegetation.

"(2) The applicant understands and accepts that it may be assessed a cost of an upgrade to the capacity of pump station number two." This court subsequently granted the defendant's petition for certification to appeal, and the defendant timely filed the present appeal.[10]

The defendant claims that, by sustaining the plaintiff's appeal and remanding the matter back to the defendant with direction to grant the sewer extension application, the trial court improperly substituted its own judgment for the reasoned and lawful discretion exercised by the defendant. The defendant advances several arguments related to its claim. First, it argues that the court failed to identify any specific statute or regulation that the defendant violated by denying the sewer extension application, which had included a request to grant conditional approval. Next, it argues that, although the court concluded that the defendant did not have a ministerial duty to grant the application but, rather, was entitled to exercise its discretion in determining whether to approve the application, the court effectively rendered the decision ministerial by concluding that because the plaintiff's application complied with all of the defendant's engineering and administrative requirements, the failure to grant approval was arbitrary. The defendant further argues that, contrary to the court's decision, there was evidence in the record demonstrating that the defendant had not granted a conditional approval in the past thirty years, which effectively constituted a policy to which the defendant was entitled to adhere. Finally, the defendant contends that the court used language that appeared to imply, without any supporting evidence, that the defendant's denial of the application was motivated by a bias against affordable housing.

The plaintiff counters that, on the basis of the record presented, the court properly determined that the defendant acted arbitrarily and abused its discretion in failing to grant a conditional approval. In addition to reasserting its argument that the defendant had a ministerial obligation to approve the sewer extension application, the plaintiff contends that, even if the defendant's action was discretionary, it abused that discretion because it used its limited authority over the sewer system to make a land use decision and to improperly thwart an unwanted multifamily residential development. We agree with defendant that, under the circumstances, whether to grant a conditional approval of a sewer extension application was a decision properly left to the discretion of the defendant, and the court impermissibly substituted its own discretion and judgment for that of the defendant by overriding its decision

and ordering a conditional approval of the application.

We begin by setting forth applicable principles of law, including our standard of review. "[W]ater pollution control authorities are quasi-municipal corporations created pursuant to statute that may exercise the power to acquire, construct, maintain, supervise, manage and operate a sewer system and perform any act pertinent to the collection, transportation and disposal of sewage. . . . In defining the powers and duties of such authorities, [General Statutes] § 7-247 (a) provides, inter alia, that they may establish and revise rules and regulations for the supervision, management, control, operation and use of a sewerage system, including rules and regulations prohibiting or regulating the discharge into a sewerage system of any sewage or any stormwater run-off which in the opinion of the water pollution control authority will adversely affect any part or any process of the sewerage system . . . ." (Citation omitted; internal quotation marks omitted.) *Dauti Construction, LLC* v. *Water & Sewer Authority*, supra, 125 Conn. App. 661.

Accordingly, "[i]n considering an application for sewer service, a water pollution control authority performs an administrative function related to the exercise of its powers. . . . When a water pollution control authority performs its administrative functions, a reviewing court's standard of review of the [authority's] action is limited to whether it was illegal, arbitrary or in abuse of [its] discretion . . . . Moreover, there is a strong presumption of regularity in the proceedings of a public agency, and we give such agencies broad discretion in the performance of their administrative duties, provided that no statute or regulation is violated. . . .

"With respect to factual findings, a reviewing court is bound by the substantial evidence rule, according to which, [c]onclusions reached by [the authority] must be upheld by the trial court if they are reasonably supported by the record. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the [authority] supports the decision reached. . . . If a trial court finds that there is substantial evidence to support a [water pollution control authority's] findings, it cannot substitute its judgment as to the weight of the evidence for that of the [authority]. . . . If there is conflicting evidence in support of the [authority's] stated rationale, the reviewing court . . . cannot substitute its judgment for that of the [authority]. . . . The [authority's] decision must be sustained if an examination of the record discloses evidence that supports *any one of the reasons given*. . . . Accordingly, we review the record to ascertain whether it contains such substantial evidence and whether the decision of the defendant was rendered in an arbitrary or discriminatory fashion. . . . We review the court's decision to determine if, when

reviewing the decision of the administrative agency, it acted unreasonably, illegally, or in abuse of its discretion." (Citation omitted; emphasis added; internal quotation marks omitted.) *Landmark Development Group, LLC* v. *Water & Sewer Commission*, 184 Conn. App. 303, 316–17, 194 A.3d 1241, cert. denied, 330 Conn. 937, 195 A.3d 385, cert. denied, 330 Conn. 937, 195 A.3d 386 (2018).

As our Supreme Court has emphasized, "water pollution control authorities are afforded broad discretion in deciding whether to provide sewer service to property owners, but cannot exercise that discretion in an arbitrary or discriminatory manner . . . ." *Forest Walk, LLC* v. *Water Pollution Control Authority*, 291 Conn. 271, 279, 968 A.2d 345 (2009). Only if it appears that a public agency reasonably could have reached only one conclusion is it proper for a court to "direct that agency to do that which the conclusion requires." *Dauti Construction, LLC* v. *Water & Sewer Authority*, supra, 125 Conn. App. 664.

Turning to the present case, one of the reasons stated by the defendant for denying the supplemented application was that there currently was insufficient capacity in the sewer system to service the proposed development. Although it was anticipated that the system would have the necessary capacity once the ongoing repairs and upgrades to it were completed, the defendant also concluded that granting an approval conditioned on the future completion of such work was unwarranted. In accordance with applicable standards of review, unless that rationale was illegal, arbitrary, or constituted an abuse of discretion, it was entitled to deference from the court. See *Landmark Development Group, LLC* v. *Water & Sewer Commission*, supra, 184 Conn. App. 316.

A municipal land use or related administrative agency generally may conditionally approve an application submitted for its consideration provided that the conditions imposed "are within the scope of the agency's statutory authority and are an attempt to implement its existing regulations for a specific project on which the agency acts in an administrative capacity." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (4th Ed. 2015) § 22:16, p. 721. Our appellate courts have upheld the use of conditional approvals with respect to land use related applications noting that, even in cases in which the application is conditioned on events outside the control of the granting authority, such as obtaining approval from another agency, a conditional approval can "achieve greater flexibility in zoning administration by avoiding stalemates between a zoning authority and other municipal agencies over which it has no control." *Blaker* v. *Planning & Zoning Commission*, 212 Conn. 471, 482, 562 A.2d 1093 (1989). The mere fact, however, that a conditional approval of an

application would be a viable option available to an agency in considering an application does not mean that the agency must exercise that option whenever possible and in all situations.

In *CMB Capital Appreciation, LLC* v. *Planning & Zoning Commission*, 124 Conn. App. 379, 4 A.3d 1256 (2010), cert. granted, 299 Conn. 925, 11 A.3d 150 (2011) (appeal withdrawn September 15, 2011), this court was asked to decide whether it was proper for the trial court to order the planning and zoning commission to approve conditionally an affordable housing site plan application that was filed pursuant to General Statutes § 8-30g and which the commission had denied on the ground that a necessary sewer connection application, most likely, would be denied. This court affirmed the decision of the trial court, concluding that, rather than denying the application, the commission was required to grant the affordable housing application on the condition that the plaintiff obtain approval from the sewer authority. Id., 394, 399. In reaching this conclusion, this court provided an overview of our case law regarding conditional approvals. See id., 386–90.

Of particular relevance to the present appeal, is this court's discussion in *CMB Capital Appreciation, LLC*, of *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 653 A.2d 798 (1995), in which our Supreme Court held that, unless a zoning commission could demonstrate that its refusal to grant the conditional approval of an affordable housing application was necessary to protect substantial public interests, "the conditional granting of [the application] was not only authorized *but required*." (Emphasis added.) Id., 164. In discussing conditional approvals in general, our Supreme Court in *Kaufman* noted, however, that even though a commission is *empowered* to grant conditional approval of an application, the mere existence of such authority does not "demonstrate that the commission was . . . required to do so. In our past cases approving conditional zoning, we have described conditional zoning *not as an obligation*, but as a means of achieving greater flexibility in zoning administration . . . ." (Emphasis added; internal quotation marks omitted.) Id., 165. Although the court in *Kaufman* proceeded to hold that conditional zoning *was an obligation in the context of an affordable housing application* because imposing such a requirement would help to advance an expressed legislative goal of encouraging the construction of affordable housing; id., 164; the court's language strongly suggests that, outside of that specific context, whether to grant conditional approval of an application remains a matter of agency discretion. Moreover, in *AvalonBay Communities, Inc.* v. *Sewer Commission*, 270 Conn. 409, 431–433, 853 A.2d 497 (2004), our Supreme Court made clear that the rules governing zoning approval of affordable housing applications did not extend to the decisions of a water pollution control authority, and "the legislature

has not required water pollution control authorities to treat applications related to developments with affordable housing components differently from applications for other types of developments, as it has with other municipal bodies." Id., 432–33.

Unlike in *Kaufman* and *CMB Capital Appreciation, LLC*, the application at issue in the present appeal was not for zoning approval of an affordable housing application filed pursuant to § 8-30g, but an application for a sewer extension filed pursuant to § 7-246a.[11] Nevertheless, the court concluded that granting conditional approval of the sewer extension application was required to afford the plaintiff the opportunity to continue to make progress on its affordable housing project while at the same time protecting against any risk of harm to the public's interest in proper waste water management. By stating that a "conditional approval in the present case would protect against the risk of harm to the public [interest]," the court substituted its own decision-making calculus for that of the municipal agency entrusted with discretionary authority over such matters. The court also mistakenly cited to *CMB Capital Appreciation, LLC* v. *Planning & Zoning Commission*, supra, 124 Conn. App. 391, for the proposition that a conditional approval of the application would advance "the legislative purpose of encouraging the construction of affordable housing" (internal quotation marks omitted); even though such consideration should be limited to affordable housing zoning applications and not to applications before a water pollution control authority. See *AvalonBay Communities, Inc.* v. *Sewer Commission*, supra, 270 Conn. 431–33.

In exercising its discretion, the defendant chose to reject the rationale relied on by the trial court in favor of a more cautious approach that required the plaintiff to file a new application once it could demonstrate that sufficient sewer capacity existed for the planned development. Although the defendant's decision is contrary to the approach the trial court favored, the record does not support a conclusion that the defendant's decision was illegal, arbitrary, or an abuse of discretion. Accordingly, the defendant was entitled to a presumption of regularity in its decision-making process. See *Landmark Development Group, LLC* v. *Water & Sewer Commission*, supra, 184 Conn. App. 316 ("question is not whether the trial court would have reached the same conclusion, but whether the record before the [authority] supports the decision reached" [internal quotation marks omitted]). In exercising its discretion not to grant a conditional approval in this case, the defendant explained that unknown and unforeseen problems potentially could arise between the time of approval and the completion of the sewer upgrades that could adversely impact the town. Although the plaintiff attempts to make much of the fact that the defendant did not provide specific examples of the types of prob-

lems it foresaw, we are unconvinced that the lack of detailed explication so undermined the defendant's reasoning as to permit the trial court to disregard it and substitute what the court clearly believed was a more equitable outcome.

Finally, the defendant provided the additional rationale that it was a settled policy of the defendant not to grant conditional approval of applications. The court found that there was no evidence that any such policy existed. The existence of an officially promulgated policy, however, was not essential in order to justify the position taken by the defendant. There was unrebutted testimony by Edwards that the defendant had not granted a conditional approval in more than thirty years. That testimony was evidence upon which the defendant was entitled to rely, and it was sufficient to demonstrate that the defendant had a practice to refrain from granting conditional approvals and, by choosing not to do so in the present case, it was not acting arbitrarily but, rather, in accordance with its usual practices and procedures. Having reviewed the record and the arguments of the parties, we conclude that the court improperly substituted its own discretion and judgment for that of the defendant.

The judgment is reversed and the case is remanded with direction to render judgment denying the plaintiff's appeal.

In this opinion the other judges concurred.

[1] The defendant also claims that the trial court improperly determined that the defendant had the authority to grant the application despite a negative report from the town's planning and zoning commission that was issued pursuant to General Statutes § 8-24. That provision provides in relevant part that "[n]o municipal agency or legislative body shall . . . extend public utilities . . . until the proposal to take such action has been referred to the [municipal planning and zoning] commission for a report. . . ." Because we reverse the judgment of the trial court on the basis of the defendant's claim that the court improperly substituted its judgment for that of the defendant, it is unnecessary to decide whether the court correctly determined that a negative § 8-24 report by the town's zoning commission did not preclude, as a matter of law, the granting of the sewer extension application by the defendant. We conclude that this issue is not likely to recur on remand because our disposition requires no further action on the present application and, thus, we do not exercise our discretion to review it. See, e.g., *Sullivan* v. *Metro-North Commuter Railroad Co.*, 292 Conn. 150, 164, 971 A.2d 676 (2009) (addressing claim likely to arise during proceeding on remand); *Barlow* v. *Commissioner of Correction*, 166 Conn. App. 408, 427, 142 A.3d 290 (2016) (same), appeal dismissed, 328 Conn. 610, 182 A.3d 78 (2018). Furthermore, it is entirely speculative on the present record whether this precise issue, which raises complicated questions of statutory construction, is likely to arise again in the present case even if the plaintiff renews or files a revised sewer extension application and that application is referred for a new § 8-24 report. The primary reason for the prior negative report was the unfinished sewer repairs and upgrades, which may no longer be an issue. Given our reversal of the judgment on other grounds, any further discussion of the issue would be tantamount to an advisory opinion, which we cannot render. See *Tyler E. Lyman, Inc.* v. *Lodrini*, 78 Conn. App. 582, 589–90 n.5, 828 A.2d 676 (2003).

[2] General Statutes § 7-246a provides: "(a) Whenever an application or request is made to a water pollution control authority or sewer district for (1) a determination of the adequacy of sewer capacity related to a proposed use of land, (2) approval to hook up to a sewer system at the expense of the applicant, or (3) approval of any other proposal for wastewater treatment

or disposal at the expense of the applicant, the water pollution control authority or sewer district shall make a decision on such application or request within sixty-five days from the date of receipt, as defined in subsection (c) of section 8-7d, of such application or request. The applicant may consent to one or more extensions of such period, provided the total of such extensions shall not exceed sixty-five days.

"(b) Notwithstanding any other provision of the general statutes, an appeal may be taken from an action of a water pollution control agency or sewer district pursuant to subsection (a) of this section in accordance with section 8-8."

[3] In addition to the sewer extension, the application also sought a sewer capacity allocation and conditional approval to connect to the sewer system.

[4] The town had appropriated money needed to upgrade the sewer system in 2015 and had contracted out the design work.

[5] The representative town meeting is the legislative body of the town. General Statutes § 8-24 provides in relevant part that "[a] proposal disapproved by the commission shall be adopted by the municipality . . . only after the subsequent approval of the proposal by (A) a two-thirds vote of the town council where one exists, or a majority vote of those present and voting in an annual or special town meeting, or (B) a two-thirds vote of the representative town meeting or city council or the warden and burgesses, as the case may be. . . ."

[6] The trial court found that the zoning commission's negative report was not based on any identified concern regarding the plan of development or existing zoning regulations but solely on the basis of sewer capacity, which was an issue for the defendant and outside the authority of the zoning commission to consider. This observation caused the court to question the motive behind the zoning commission's decision to issue a negative report. The court made no express finding, however, that the defendant's decision was similarly the result of an improper motive or bias.

[7] The plaintiff's motions to supplement the record sought to offer evidence demonstrating that the sewer upgrades and repairs were on track to be completed by the summer of 2017, which contradicted the testimony of the public works director that the repairs could take as long as four years to complete. The defendant argued that the evidence the plaintiff sought to admit postdated its decision to deny the sewer extension application and, thus, was not relevant to the issues raised in the appeal. The court determined that the additional evidence was "necessary for the equitable disposition of the appeal" and granted the motions to supplement the record. The defendant has not challenged the court's decision to grant those motions as part of its appeal to this court. Furthermore, the supplemental information at issue was presented to and considered by the defendant on remand.

[8] Although the defendant later argued to the trial court that this change in development plans exceeded the scope of the court's remand order, the court rejected that argument indicating that, although the plaintiff revised the number of units from 155 to 187, that change had no meaningful effect on the issue of available capacity and, therefore, was inconsequential in nature. In the present appeal, the defendant has not challenged this aspect of the court's decision.

[9] In its brief to this court, the plaintiff claims that, at the April 3, 2018 hearing, the parties stipulated that the new force main had been installed under the Saugatuck River but was not yet connected to the town's sewer system, although this would be accomplished within forty-five to sixty days. The parties also allegedly stipulated that the upgrade to the pump station would occur no later than August, 2018 and that, once these steps were completed, the town's sewer system would have sufficient capacity for the plaintiff's proposed residential development. If such a written stipulation or motion was filed, it does not appear in the record. Furthermore, neither of the parties included a copy of any written stipulation in its appendix, and, if oral, neither party ordered a transcript of the hearing before the trial court. Accordingly, we have no way of verifying what facts, if any, were stipulated to before the trial court. This lacuna in the record hampers our consideration of whether and to what degree the alleged stipulated facts may have influenced the court's decision to sustain the appeal and to order the conditional approval of the plaintiff's application.

[10] The trial court's judgment remanding the case to the defendant raises the issue of whether the trial court's ruling constitutes an appealable final judgment. Appeals from the decisions of water pollution control authorities are not governed by the Uniform Administrative Procedure Act, General Statutes § 4-183 (j), which expressly provides that "a remand is a final

judgment." Rather, such appeals are governed by § 7-246a (b), which provides in relevant part that "an appeal may be taken from an action of a water pollution control agency . . . in accordance with [General Statutes §] 8-8," the statute governing appeals from zoning boards and commissions. Thus, as with a zoning appeal, "it is the scope of the remand order in [a] particular case that determines the finality of [a] trial court's judgment." (Internal quotation marks omitted.) *Barry* v. *Historic District Commission*, 108 Conn. App. 682, 688, 950 A.2d 1, cert. denied, 289 Conn. 942, 959 A.2d 1008, cert. denied, 289 Conn. 943, 959 A.2d 1008 (2008). "A judgment of remand is final if it so concludes the rights of the parties that further proceedings cannot affect them. . . . A judgment of remand is not final, however, if it requires [the agency to make] further evidentiary determinations that are not merely ministerial." (Citations omitted; internal quotation marks omitted.) *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 130, 653 A.2d 798 (1995). In the present case, the trial court's remand order directed the agency to approve the plaintiff's sewer extension application and did not require it to make further evidentiary determinations before doing so. Consequently, the trial court's decision so concluded the rights of the parties that further proceedings could not affect them, and, thus, the trial court's remand order constitutes an appealable final judgment. See id., 131; see also *Children's School, Inc.* v. *Zoning Board of Appeals*, 66 Conn. App. 615, 617–19, 785 A.2d 607 (final judgment because remand ordered approval of special exception application subject to conditions and zoning board not required to make further evidentiary determinations), cert. denied, 259 Conn. 903, 789 A.2d 990 (2001).

[11] The court indicated in its memorandum of decision that the parties conceded at argument that § 8-30g does not apply to this case.

---